IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISON

**WILLIAM HARRISON FARLEY,**

    Plaintiff,

v.

**CMFG LIFE INSURANCE COMPANY, d/b/a "CUNA MUTUAL"**

Serve:
Registered Agent
CT Corporation System
4701 Cox Road, Suite 285
Glen Allen, VA
23060-6080

    Defendant.

Civil Action No: 6:22-cv-24

**JURY TRIAL DEMANDED**

## COMPLAINT

COMES NOW, Plaintiff William Harrison Farley (hereinafter, "Mr. Farley" or "Plaintiff"), by counsel, and states as his Complaint against CMFG Life Insurance Company, d/b/a "CUNA Mutual" (hereinafter, "CUNA Mutual" or "Defendant"), the following:

### I. JURISDICTION AND VENUE

1.  This Court has jurisdiction over this matter as it arises from the federal questions presented by the Age Discrimination in Employment Act, as codified under Title 29 U.S.C. §§ 621 through 634 ("ADEA"). *See generally* 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(4).

1

2.  Venue is appropriate as the acts and/or omissions of Defendant from which the causes of action arise occurred within the Western District of Virginia, Bedford County. *See* 28 U.S.C. § 1391(b)(2).

3.  Due to its contacts within the Commonwealth of Virginia, Defendant avails itself to the jurisdiction of this Court.

4.  Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on November 1, 2021. Plaintiff received the stamped, filed Charge of Discrimination from the EEOC on November 4, 2021, attached as **EXHIBIT A**. Pursuant to 29 CFR § 1626.18(b), Plaintiff files this lawsuit after 60 days have elapsed from the filing of the Charge of Discrimination with the EEOC.

## II. THE PARTIES

5.  Defendant CMFG Life Insurance Company is an Iowa stock corporation registered with the Virginia State Corporation Commission and doing business in the Commonwealth of Virginia and elsewhere.

6.  At all times material hereto, CMFG Life Insurance Company employed more than 20 persons and is a "person" and an "employer" and is engaged in an industry affecting commerce within the meaning of the ADEA, 29 U.S.C. § 630.

7.  Plaintiff, Mr. Farley, was born in 1961[1] and is currently sixty-one years of age. Plaintiff, at all times relevant, was a resident of and worked from his home in Huddleston, Virginia, which is located in Bedford County.

---

[1] Mr. Farley's exact date of birth is not included due to privacy concerns, and due to filing requirements as per the United States District Court, Western District of Virginia Local Rules.

2

### III. FACTUAL ALLEGATIONS

8. Mr. Farley was a dedicated 20-year employee. He was hired by CUNA Mutual on or around September 10, 2001. He worked there continuously until the time of his wrongful termination as a Sales Manager on June 17, 2021.

9. At all times during his employment with CUNA Mutual, Mr. Farley received positive work performance evaluations. At no time during his employment with CUNA Mutual did Mr. Farley receive any disciplinary action.

10. Indeed, throughout his employment, Mr. Farley amassed a series of promotions, raises, and very positive work performance evaluations.

11. In fact, Mr. Farley is the only Sales Manager in the company who met or exceeded goals throughout their entire career with CUNA Mutual.

12. In addition, Mr. Farley has attended six President's Councils and was nominated by his colleagues for CUNA Mutual's prestigious "Excellence in Leadership" award twice, which he won in 2012. Mr. Farley is the only one of his peers to have received this award.

13. In February of 2019 (and on many other occasions), Mr. Farley received a work performance evaluation labelling him a "leading performer" for CUNA Mutual.

### Mr. Farley Targeted by His Direct Supervisor

14. Then, as 2019 progressed, Mr. Farley began experiencing escalating hostility from his new supervisor, Tom Munley, Vice President of Credit Union Sales.

15. In 2019, Mr. Farley was part of efforts to reorganize the Segment in which he worked. Mr. Munley, who was new to the Segment, refused to take suggestions from Mr. Farley and changed every decision made by Mr. Farley and his team, even if it reversed a previous change that Mr. Munley had requested.

16. By early July 2019, the plan to reorganize the Segment was complete and approved by all, including Mr. Munley. The plan was communicated to the entire Segment.

17. Despite the unanimous support of Mr. Farley and his team, Mr. Munley attempted to change the structure three more times in three days. Mr. Munley made these changes while Mr. Farley had taken vacation to help his son after the birth of Mr. Farley's granddaughter.

18. Then, in mid-July of 2019, Mr. Munley informed Mr. Farley that they were going to be cutting an employee from the leadership team, which was not part of the approved reorganization plan, and that Mr. Farley "was at the top" of his list to go.

19. After this, Mr. Farley made numerous attempts to openly communicate and engage with Mr. Munley in order to demonstrate Mr. Farley's willingness to sort out any issues that Mr. Munley perceived.

20. Mr. Munley refused to respond to Mr. Farley's numerous and frequent communications.

21. Mr. Farley was then notified by his own subordinate employees that Mr. Munley was interviewing them in order to obtain any information that he [Mr. Munley] could use to undermine Mr. Farley.

22. Mr. Munley could not find any such information, because it did not exist.

23. The hostility from Mr. Munley continued until February 2020 when Mr. Farley received a written work performance evaluation incorrectly rating him as a "low successful performer."

24. Mr. Farley consistently demonstrated excellent work performance such that he consistently outperformed his peers. Further, he had received no disciplinary actions.

25. Shockingly, Mr. Munley cited Mr. Farley for "failing to communicate," which was factually inaccurate, particularly due to the pains Mr. Farley took to communicate well and frequently with Mr. Munley. Mr. Farley made repeated and concerted efforts to communicate with Mr. Munley, which Mr. Munley simply ignored.

26. The false work performance evaluation also cited Mr. Farley for objectives and/or projects that had not been completed when, in fact, they had been completed fully.

27. Mr. Farley received this false written work performance evaluation prior to his performance review meeting with Mr. Munley. Concerned about the clearly untruthful accusations, Mr. Farley contacted Eileen Julien, Senior HR Consultant, to ask that she sit in on the meeting. Mr. Farley further inquired about what he should do if he was experiencing a hostile work environment and retaliation by his supervisor. Ms. Julien refused to attend the meeting, provide guidance, investigate, or be involved in any way.

28. In his meeting with Mr. Munley, Mr. Farley pointed out several inaccuracies in the evaluation, but Mr. Munley refused to correct them.

### Direct Evidence: Mr. Farley Makes Multiple Complaints Regarding Age Discrimination

29. Despite Mr. Munley's efforts to sabotage Mr. Farley's performance by not allowing Mr. Farley to fill three vacant positions, Mr. Farley's team reached 200% of their financial goals in 2019 with all other performance objectives met or exceeded (while many others in CUNA Mutual did not hit their goals).

30. The success of Mr. Farley's team continued into 2020. They remained on plan in 2020, keeping five of their largest books of lending business (close to $2.5 million), even though two of those books were already committed to go to another entity.

31. In August 2020, even though Mr. Farley's team was highly successful, Mr. Munley issued Mr. Farley an unfair and factually inaccurate "Competency Assessment."

32. In his years with CUNA Mutual, Mr. Farley had never received a "Competency Assessment," so he contacted the in-house creator of the assessment to ask about it.

33. According to the creator of the assessment, the Competency Assessment used by Mr. Munley had never been used by CUNA Mutual for performance purposes and, instead, was approved by the company only for coaching and leadership development.

34. Shortly after Mr. Farley inquired about the purpose of the Competency Assessment, he was told to meet with Eileen Julien by phone the following Monday.

35. On the call, which included Mr. Farley, Ms. Julien, and another employee for the Human Resources or Legal Department, Ms. Julien pointedly asked whether Mr. Farley had hired an attorney.

36. After witnessing a further increase in hostility from Mr. Munley in August/September 2020, Mr. Farley sent a written complaint to Senior HR Consultant Eileen Julien. Mr. Farley submitted the following to Ms. Julien on or around September 15, 2020:

> "I wanted to inform you that I believe that I'm being set up for failure here and I think it has something **to do with my age** which is unfair. I've earned years of positive work performance evaluations and I've established a record of high performance. I complained to you in February this year that I believed I was being retaliated against and suffering in a hostile work environment. I received the first low review of my career. I only want to continue working in a healthy environment with CUNA but I would like my claims to be properly investigated. I believe the competency assessment tool is being used to provide a misleading and inaccurate paper trail to get rid of me and possibility the other sales managers **who are of similar age**

6

**to myself**. Please let me know that you have received this and what steps you plan to take next." (emphasis added).

37. Despite his direct complaints of age discrimination, the hostility from Mr. Munley persisted.

38. At or around this time, Mr. Farley became aware that a coworker (direct report), Kristy Amick, had also recently filed a Charge of Discrimination alleging that Mr. Munley had discriminated against her in failing to provide her with a promotion to a regional sales executive role, for which she was eligible and qualified.

### Mr. Farley Nominated for Annual Award by his Direct Reports

39. In October of 2020, Mr. Farley was nominated again for the "Excellence in Leadership" award by his frontline staff/direct reports. Mr. Farley's direct reports had these glowing words to say about his professionalism, work product, and work ethic.

| Tom McLane | Bill is the most effective Sales Manager and Sales Coach I have ever encountered.  Because of him, I am better skilled in using financial acumen, solution selling, power messaging, and challenger rep tenants in every single one of my presentations, and it has led to consistent sales success for me over the past 14 years.  Bill is always open to reviewing and coaching key deals, and always challenging me to find the credit unions' pains and sweet spots and coaching me to come to the right conclusions on how to frame a message to the credit union.  Simply speaking, I am not sure if anyone else does the things that Bill does as effectively as he does them for his staff in terms of finding strategies that help credit unions see the vision and value of a solution rather than simply pushing product.  He is always open to having coaching calls on any deals and I have multiple sessions a month with |

|  | him. He expects me to come prepared with an agenda, knowing the CU's pains, having the pre call message planner completed, my interpretation of the proper questioning strategy, and the correct messaging for the meeting. Over the years, he has made it become second nature to me and to others on his team to know the steps to develop a winning sales strategy. Bill's guidance and coaching was integral in transforming me from a decent sales person to a leading sales person. Also, his record alone over the past 14 years speaks for itself, consistently at the top or near the top in his relative standings. He is well liked and respected within his direct reports, support staff, and colleagues. Bill is a true pioneer in the credit union industry and literally grew up in the system, the son of a credit union legend. In 2006 he helped develop the Select Segment, and has helped the segment evolve over the years, and the success of the segment also speaks for itself. For these reasons, I feel that Bill is truly a deserving recipient of this prestigious award. Thank you. |
|---|---|

| | |
|---|---|
| Tom McLane, Dave McBeth, Ray Francis, Kristi Amick | As I stated in my earlier entry, the signatories on this entry all feel the same way about Bill Farley.   So to reiterate these points into a joint entry:<br><br>*Bill is the most effective Sales Manager and Sales Coach we have ever encountered.   We wish to emphasize his coaching skills alone have lead us all to top levels of success.<br><br>*We are better skilled in using financial acumen, solution selling, power messaging, and challenger rep skills in our presentations.<br><br>*Bill is always open to reviewing and coaching key deals, and always challenging use to find the credit unions' pains and sweet spots and coaching us to come to the right conclusions on how to frame a message to the credit union.<br><br>*We have not experience anyone else that does the things that Bill does as effectively as he does them for his staff in terms of finding strategies that help credit unions see the vision and value of a solution rather than simply pushing product.<br><br>*He is always open to having coaching calls on any deals and most of us have multiple sessions a month with him.<br><br>*He has high expectations of us, and expects us to come prepared with an agenda, knowing the CU's pains, having the pre call message planner completed, our interpretation of the proper questioning strategy, and the correct messaging for the meeting.  This has made us much better Account Executives over the years. |

| | |
|---|---|
| | *Also, his record alone over the past 14 years speaks for itself, consistently at the top or near the top in his relative standings.  He is well liked and respected within his direct reports, support staff, and colleagues.<br><br>One thing I didn't mention in my individual entry before, is that Bill truly care about us.  When my wife had a massive stroke in June of 2014, which very nearly ended her life, I texted Bill in the middle of the night to inform him.  Bill then, without me asking, made a 4 hour drive and was by my side providing support at the most difficult time in my life, and was by my side by 9:30 the next morning.  That is what I think of first when I think of Bill Farley. |
| Marc Gagne | Bill is the best manger I have ever had at CUNA Mutual in the 23 years I have worked here.  He is always willing to give his time to help me succeed.  His sales skills and insight coaching given to me have helped me close deals and retain business on a regular basis.  Even when I don't win the deal or retain a piece of business he reinforces what I learned and encourages me to use what was learned in the future.  He is a manager who not just says he cares about you and your success, but demonstrates it by generously giving his time and going to bat for me when I need help from leadership, product, claims, underwriting and etc.  He is honest, dedicated and sincere.  Because of that he has earned my respect and I would do anything for him to make sure he is |

| | |
|---|---|
| | successful - as he does for me.  A couple examples of this are his willingness to help me even when he is out of the office on vacation or changing his plans on a heartbeat if I need him to travel with me (Pre -COVID) to close a very important deal. Bill is the primary reason I accepted my current role and why I am so happy to have the job I have today. |

### Mr. Farley Experiences Retaliation | Submits Additional Reports

40. Ultimately, on or around November 6, 2020, Human Resources representative Qulishia Williams issued Mr. Farley a "Summary of Investigation Findings" determining that she completed an investigation into Mr. Farley's "concerns regarding age discrimination and a hostile work environment" but that she was "unable to substantiate a violation of" any relevant work-place policies.

41. Upon information and belief, Ms. Williams believed that neither the investigation nor the results were credible or well-founded, but she was directed to provide a conclusion friendly to CUNA Mutual.

42. In February of 2021, Mr. Farley again submitted a written report to Human Resources Representative Ms. Julien indicating that he was continuing to experience

11

discrimination and now retaliation. Mr. Farley advised that Mr. Munley had misconstrued Mr. Farley's work performance as a "follow-up to my previous complaint".

43. Despite this report, again highlighting Mr. Munley's discriminatory, hostile, and retaliatory treatment on the basis of age, CUNA Mutual did nothing to meaningfully investigate or prevent the hostile treatment.

44. In March of 2021, Steve O'Dell (one of Mr. Farley's leadership team peers), informed Mr. Farley that his VP-Sales, Susan Hochprung, stated that no employee would be terminated in 2021 through the end of the year. This proved to be false, and Mr. Farley was the only exception to that rule.

45. Between 2017 and 2021, Mr. Farley attempted to apply for seven (7) available positions within CUNA Mutual (some of which he was told by the hiring manager he was going to get). Individuals, all younger that Mr. Farley, with less experience, and less success, were hired for these positions despite Mr. Farley's equivalent or better qualifications.

46. As one discrete example, in May of 2021, Mr. Farley, despite the fact that he was one of the original leaders in his Segment and loved what he did, attempted to apply for a lateral position outside of the Segment to meet Mr. Munley's stated goal of reducing the number of Segment Sales Managers and no longer have a reporting relationship to Mr. Munley. Mr. Farley was denied a lateral position to which he was eligible and qualified. An individual younger than Mr. Farley was hired for this position. The hiring director, Keith Kremers, stated, "I know you are far more qualified with an excellent track record, but there is just too much noise around you to take the chance." Mr. Farley believed that retaliatory comments by Mr. Munley was the determining reason for this failure to transfer.

47. In early June 2021, Mr. Farley reported to Mr. Munley that his team had retained all five of the $2.5 million books of business at risk, and CUNA Mutual would not experience the anticipated loss.

48. Then, on June 17, 2021, Mr. Farley was notified by Mr. Munley that Mr. Farley was terminated from employment, effective June 30, 2021.

49. Despite the non-existence of work performance issues regarding his termination and despite receiving communications that he was eligible for re-hire Mr. Farley has since applied for thirteen (13) different positions with CUNA Mutual for which he was imminently qualified. However, CUNA Mutual has failed to hire Mr. Farley in an on-going discriminatory and retaliatory scheme on the basis of age and his protected age reports.

50. Moreover, with regard to these thirteen (13) different positions that CUNA Mutual failed to hire Mr. Farley for, Mr. Farley's direct reports and their extended teammates wrote unsolicited letters of recommendation for Mr. Farley as each was upset about Mr. Farley's termination from employment and wanted to assist with ensuring he became employed with CUNA Mutual again. Specifically, they wrote,

> We are writing you as a collective and unified voice on behalf of Bill Farley. We are recent staff members who reported to Bill, many of us as long as 15 years.
>
> It is our intention to strongly recommend Bill for a position on your team. Bill is, and has always been, an excellent performer who has consistently achieved superior results. The team which he managed was number 1 in Sales Results in 9 out of the last 15 years. Bill has been recognized as having unparalleled financial acumen coupled with an elite ability to help Credit Unions address needs with solutions. There is no doubt that Bill can achieve the same results, and beyond for your solution. Bill has a passion for credit unions that is rare, and the ability to deliver results for both the company and the credit unions, and you will very easily see that Bill will be an optimal fit within your space.

> Everyone copied on this e-mail passionately endorse Bill for a position with you, and we are certain that you will have no regrets. Thank you for taking the time to review this information, and please feel free to follow up with any and every one copied on this communication with any questions.

51. Despite this glowing recommendation, as stated, CUNA Mutual has failed to hire Mr. Farley in an on-going discriminatory and retaliatory scheme on the basis of age and his protected age reports.

52. Mr. Farley is protected from age discrimination and retaliation by the Age Discrimination in Employment Act, as codified under Title 29 U.S.C. §§ 621 through 634 ("ADEA").

53. CUNA Mutual has unlawfully discriminated and retaliated against Mr. Farley because of his age in violation of the ADEA. CUNA Mutual has engaged in discriminatory practices with malice or reckless indifference to the federally protected rights of Mr. Farley and would not have taken the discriminatory and retaliatory actions against him but for Mr. Farley's age and protected reports. Any reasons cited by CUNA Mutual for terminating Mr. Farley or failing to re-hire him were pretextual.

54. CUNA Mutual's decisions to terminate and then not re-hire Plaintiff were not based upon legitimate business reasons but were merely a pretext to unlawful age discrimination and retaliation, and such events occurred under circumstances that raise a reasonable inference of unlawful discrimination and retaliation based upon his age and protected reports.

55. Mr. Farley was targeted and subjected to age-related discrimination by CUNA Mutual and/or Mr. Munley, whom, upon information and belief, held a discriminatory animus towards Mr. Farley due to his age. This ultimately resulted in Mr.

Farley's pretextual termination from employment and/or non-hire for positions for which he was qualified.

### COUNT I:  CLAIM FOR DISCRIMINATION IN VIOLATION OF ADEA

56. Mr. Farley incorporates by reference herein the preceding paragraphs of this Complaint.

57. At the time of his termination from employment from CUNA Mutual, Mr. Farley was sixty years of age, and protected from age discrimination by the ADEA.

58. Prior to Mr. Farley's termination from employment, Mr. Farley was performing his work at a satisfactory level, meeting or exceeding the legitimate business expectations of CUNA Mutual.

59. During his employment with CUNA Mutual, Mr. Farley experienced unwelcome discrimination based upon his age, ultimately resulting in Mr. Farley's termination from employment and a refusal to re-hire Mr. Farley.

60. CUNA Mutual would not have refused to transfer, hire, and/or terminated Mr. Farley, or taken the other discriminatory actions against him, but for Mr. Farley's age.

61. Any reasons cited by CUNA Mutual for Mr. Farley's treatment were pretextual as Mr. Farley's work performance was meeting or exceeding CUNA Mutual's legitimate business expectations.

62. Mr. Farley was replaced by substantially younger individuals who now perform his former job duties and/or Mr. Farley's position was left open. As a direct and proximate result of CUNA Mutual's actions, Mr. Farley has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.  They did go down from 3 to 2, and one

that remained was younger but not substantially younger with substantially less experience. Just want to make that clear – I wasn't replaced.

63. Specifically, Mr. Farley has undergone hours of counseling and now takes four different medications ~~for~~ now has both a stress related hiatal hernia, and a regular hernia (due to the stress' degenerative effect on his digestive system), anxiety, depression, and panic attacks in the night.

64. At all times material hereto, CUNA Mutual engaged in a discriminatory practice or practices with malice or reckless indifference to the federally protected rights of Mr. Farley so as to support an award of liquidated damages.

65. The above-described acts by CUNA Mutual and employees of CUNA Mutual constitute age discrimination in violation of the Age Discrimination in Employment Act, as codified under Title 29 U.S.C. §§ 621 through 634 ("ADEA").

### COUNT II:  CLAIM FOR RETALIATION IN VIOLATION OF ADEA

66. Mr. Farley incorporates by reference herein the preceding paragraphs of this Complaint.

67. At the time of his termination from employment from CUNA Mutual, Mr. Farley was sixty years of age, and protected from retaliation by the ADEA.

68. Prior to Mr. Farley's unlawful termination from employment, Mr. Farley was performing his work at a satisfactory level and meeting the legitimate business expectations of CUNA Mutual.

69. Mr. Farley made no less than three federally protected complaints at CUNA Mutual concerning the age-based discriminatory treatment he endured during his employment. However, CUNA Mutual failed to meaningfully address Mr. Farley's

complaints and, instead, retaliated against him by unlawfully terminating his employment shortly after those complaints and refused to transfer or re-hire Mr. Farley.

70. The individuals involved in the termination of Mr. Farley's employment and the failure to rehire Mr. Farley were aware of his protected reports.

71. CUNA Mutual would not have refused to transfer, hire, and/or terminated Mr. Farley, or taken the other retaliatory actions against him, but for Mr. Farley's age.

72. The discriminatory and retaliatory actions taken against Mr. Farley, including CUNA Mutual's termination of Mr. Farley's employment, are causally connected to Mr. Farley's complaints of age discrimination.

73. Any reasons cited by CUNA Mutual for Mr. Farley's treatment were pretextual as Mr. Farley's work performance was meeting legitimate business expectations.

74. As a direct and proximate result of CUNA Mutual's actions, Mr. Farley has suffered and will continue to suffer pecuniary loss, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

75. At all times material hereto, CUNA Mutual engaged in retaliatory practices with malice or reckless indifference to the federally protected rights of Mr. Farley so as to support an award of liquidated damages.

76. The above-described acts by CUNA Mutual and employees of CUNA Mutual constitute retaliation in violation of the Age Discrimination in Employment Act, as codified under Title 29 U.S.C. §§ 621 through 634 ("ADEA").

WHEREFORE, Plaintiff William Harrison Farley prays for judgment against Defendant CMFG Life Insurance Company, and for equitable and injunctive relief, back and front wages and benefits, liquidated damages, together with prejudgment interest

17

from the date of Mr. Farley's termination from employment, and for costs and attorneys' fees, and for such other and further relief as may be just and equitable.

**TRIAL BY JURY ON ALL CLAIMS, INCLUDING WHETHER THE CLAIMS ARE SUBJECT TO ARBITRATION, IS DEMANDED.**

Respectfully Submitted,

**WILLIAM HARRISON FARLEY**

*/s/ Brittany M. Haddox*
Thomas E. Strelka, Esq. (VSB# 75488)
L. Leigh R. Strelka, Esq. (VSB # 73355)
N. Winston West, IV, Esq. (VSB # 92598)
Brittany M. Haddox, Esq. (VSB # 86416)
Monica L. Mroz, Esq. (VSB #65766)
STRELKA EMPLOYMENT LAW
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA  24011
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com
brittany@strelkalaw.com
monica@strelkalaw.com

*Counsel for Plaintiff*