CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
5/24/2023
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| **WILLIAM HARRISON FARLEY,** | ) |
| | ) |
| | ) Civil Action No. 6:22-cv-24 |
| **Plaintiff,** | ) |
| | ) By: Hon. Robert S. Ballou |
| v. | ) United States District Judge |
| | ) |
| **CMFG LIFE INSURANCE COMPANY, d/b/a CUNA MUTUAL GROUP,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

This employment case involves claims against Defendant CMFG Life Insurance Company ("CUNA") for wrongful termination, retaliation, and failure to hire under the Age Discrimination in Employment Act of 1967 ("ADEA"). 29 U.S.C. §§ 621–634. CUNA moved for summary judgment on all counts. Dkt. 29. I **GRANT** CUNA's motion and dismiss this action with prejudice.

   **I.**    **Background**

CUNA sells insurance and financial services to credit unions and their members throughout the United States and splits its sales division into three components: National, Regions, and Select. The plaintiff, William Farley, began his employment with CUNA in 2001 as a division manager of business development and became a Select Sales manager in 2006. Farley was 58 years old in July 2019 when CUNA informed him and the other two Select Sales managers, Kevin Arvold (born in 1958) and Steve O'Dell (born 1966), that it intended to eliminate one of the three manager positions because of reduced business opportunities. Two years later, on June 17, 2021, CUNA notified Farley that it had eliminated his position and

1

terminated his employment effective July 8, 2021. Thomas Munley and Susan Hochsprung, who were Vice Presidents of Sales at CUNA, were responsible for the decision to terminate Farley's employment.

### A. Farley's Job Performance and Age Discrimination Complaint

In February 2020, shortly before Farley met with Munley to discuss his prior year performance review, Farley called Eileen Julien, a CUNA HR representative, to ask if she would sit in on this meeting because Farley believed he was the target of age discrimination. Julien declined to participate in Farley's performance review, but provided him with information about filing a discrimination claim with the company. Julien took no further action about Farley's allegations because he made no specific allegations of discrimination against him or others which violated company policy or constituted unlawful conduct.

Farley believed that CUNA planned to eliminate his Select Sales manager position after he received his performance review from Munley. Ultimately, Farley's annual review showed that he was a "low successful performer" with a "a mixed body of work." Dkt. 30-16, Ex. B at 1. Munley contrasted the positive aspect of Farley's work, like financial results, with his "inconsistent demonstration of leadership behaviors." Id. Specifically, Munley stated that Farley was hostile and distant when he perceived that his "authority . . . was questioned." Id. The performance review included both positive feedback on several of his prior year accomplishments, and ways to improve his perceived behavioral issues. Munley told Farley either during the annual performance review or in a phone call shortly afterward that Farley was "at the top of [Munley's] list" to be terminated. Dkt. 30-9, Ex. A at 55:20–56:4.

In September 2020, Farley sent an email to Julien that specifically raised concerns about age discrimination. Farley characterized the February 2020 performance review as inaccurate

and said that he believed "the manager assessment tool is being used to provide a misleading and inaccurate papertrail [sic] to get rid of me and possibly the other sales managers who are of similar age to myself." Dkt. 35-1. Farley requested that Julien inform him about "what steps [she] plan[ed] to take next." Id. Julien forwarded Farley's email to Qulishia Williams in HR, who began an investigation into this claim of age discrimination.

Williams completed an investigation into Farley's complaint which included an interview of Farley, during which he reiterated his concern that he was subject to age discrimination. Farley said nothing to Williams about Munley making any statements concerning Farley's age.[1] Williams concluded her investigation on November 6, 2020, without any finding of a violation of CUNA's Code of Conduct, Anti-Harassment and Discrimination Policy, or Equal Opportunity Policy. Williams provided her conclusions to Farley on the same day.

Almost three months later, on February 1, 2021, Farley sent an email to Williams in which he provided an overview of his 2020 job performance. He sent the email because he was concerned that Munley had misconstrued his job performance and contrasted the sales of the Select Sales segment with other areas of CUNA, noting that the Select Sales group was the most successful in the company. Farley acknowledged that compared to the other co-managers, Arvold and O'Dell, however, he "finished last among the 3 Select Sales Managers" in overall performance. Dkt. 35-3 at 2. Farley wrote that he shared this information so that Williams "had the full record." Id. In fact, Farley argued in this email that CUNA should not eliminate one of the three Select Sales manager positions but should take a different approach. Williams interpreted Farley's email as "an attempt to save his job" and not as a "complaint[] about age discrimination, retaliation, or anything else." Dkt. 30-12 ¶ 19.

---

[1] Farley also told Williams that he believed that hiring Randy Coleman over Farley as a regional sales manager in 2015 constituted age discrimination. Farley and Coleman were 53 and 51 years old when CUNA hired Coleman.

### B. Complaints Against Farley

CUNA asked Farley and others in the company to complete a competency assessment in August 2020 which the company uses to identify weaknesses and strengths for employee development, but not for employment decisions. Farley asked Terry Cogburn, an HR employee, to assist in raising his scores on this assessment. Specifically, Farley asked if he could pay Cogburn to help raise his scores on the assessment. Farley also told Cogburn that he had a recording of Munley stating that he would use the assessment for employment decisions. In addition, Farley told two of his fellow CUNA employees, John Slack and Adam Birenbaum, that Farley would sue the company if Munley fired him.

When several employees raised these issues to Munley, he filed a complaint against Farley with human resources on August 20, 2020. Munley complained that Farley offered to "pay for someone to inflate the results of a competency assessment," recorded "conversations with his manager," and stated that Farley "will sue the company [for age discrimination] if he is selected for a job elimination." Dkt. 35-5 at 1. The investigation Julien conducted into this complaint included an interview of another employee who stated that Farley was "concerned that the pending reduction from three to two Select Sales managers wouldn't be based on performance and would be based on something else he had done." Dkt. 35-7 at 2. Farley did not mention age discrimination to the employee, and ultimately, Julien concluded the investigation with a recommendation that Farley review several policies, including technology usage, fraud prevention, and the code of conduct. Farley did not receive any discipline or other employment action because of his comments to the HR employee.

### C. CUNA's Termination of Farley

Initially, Munley and Hochsprung expected to determine in 2020 which of the three Select Sales manager positions to eliminate, but ultimately CUNA did not make this decision until June 2021—a delay which Munley and Hochsprung claim gave the three employees advanced notice of the intended action which allowed them to seek other positions within CUNA to continue working for the Company.

Munley and Hochsprung, to decide which position to eliminate, created a matrix to analyze the strength and weaknesses of the three managers. This framework used several broad and generalized performance categories which did not have specific scoring criteria, but which provided a basis to compare the Select Sales managers. Ultimately, Farley scored the lowest of the three on the comparison of the criteria in this matrix. Based upon this evaluation, Munley and Hochsprung elected to eliminate Farley and informed him in June 2021 that his job would end in July 2021.

Farley maintains that the decision matrix was overly generalized and subjective and served as only a pretext for his elimination. He claims that Munley and Hochsprung based their decision, at least in part, on the August 2020 competency assessment and on Farley's complaint of age discrimination. Farley claims that Munley told him during a phone call that Munley and Hochsprung intended to use the competency assessment to make employment decisions with respect to the Select Sales managers.

Farley applied for fourteen positions with CUNA after his termination but did not receive an offer or interview, and withdrew his application from one of them. Admittedly, Farley does not know why CUNA did not interview or hire him for any of the positions.

## II. Legal Standard

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). Once the movant properly makes and supports a motion for summary judgment, the opposing party must show that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In determining whether a genuine dispute of material fact exists, the Court views the facts in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255. However, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. See Glover v. Oppleman, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001). On the contrary, the court has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." Felty v. Graves–Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting Celotex, 477 U.S. at 317).

The moving party bears the "'initial responsibility' of showing that there is no genuine issue of material fact." Bandy v. City of Salem, 59 F.4th 705, 709 (4th Cir. 2023) (quoting Celotex Corp., 477 U.S. at 323). If the moving party meets this burden, then the "nonmoving party must [] go beyond the pleadings and affidavits and show that there are 'specific facts showing that there is a genuine issue for trial.'" Id. at 709–10. The "mere existence of a scintilla of evidence" is insufficient to repel an "adequately supported summary judgment motion." Anderson, 477 U.S. at 252. Further, "conclusory allegations or denials, without more, are insufficient to preclude" summary judgment. Bandy, 59 F.4th at 710.

The court may not resolve disputed facts, weigh evidence, or determine credibility, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); rather, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. Anderson, 477 U.S. at 248. "Conclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence' in support of [the nonmoving party's] case." Thompson v. Potomac Elec. Power Co., 312 F.3d 645 (4th Cir. 2002) (quoting Phillips v. CSX Transp., Inc., 190 F.3d 285, 287 (4th Cir. 1999)).

### III.     Motion to Strike

Farley moved to strike CUNA's motion for summary judgment and all declarations claiming that CUNA submitted amended initial disclosures two weeks before the discovery cutoff which included newly identified potential witnesses with information relevant to Farley's failure to hire claim. CUNA identified nine individuals who have knowledge regarding the specific positions Farley applied for within CUNA. Each of these individuals submitted declarations in support of the motion for summary judgment. Additionally, Farley complains that CUNA submitted as part of the declaration of Jenefer Machovina three pages of emails not previously produced. Farley contends that he cannot defend against a motion for summary judgment when CUNA "has thwarted the entire discovery process." Dkt. 31 at 4. Importantly, Farley does not seek additional time to conduct discovery on the new individuals and does not specify prejudice beyond his conclusion that he cannot defend against the motion for summary judgment. CUNA produced during discovery documents identifying each new persons in the

initial disclosures as being involved in the hiring decisions regarding the positions Farley sought. Additionally, the newly produced emails were from an email account belonging to Farley.

A court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. Proc. 12(f). According to Federal Rule of Civil Procedure 7, the only pleadings allowed are a complaint, answer, and a reply to an answer.[2] Rule 7(a). A motion is not a pleading. Id.; see also Lacey v. Braxton, No. 7:10-cv-139, 2011 WL 3320801, at 6 (W.D. Va. Aug. 1, 2011) ("[T]he documents plaintiff wants stricken are not 'pleadings.'") (quoting Fed. R. Civ. Proc. 7(a)). Simply put, the Federal Rules do not provide for striking a motion for summary judgment. Mostofi v. Experian Info. Sols., Inc., No. DKC 11-2011, 2014 WL 12929431, at *7 (D. Md. Mar. 5, 2014) ("Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike.").

CUNA produced documents during discovery sufficient to identify the new names on the amended initial disclosures and the new emails came from an account associated with Farley. Certainly, Farley had access to this information well in advance of discovery deadlines. Additionally, Farley took no action before discovery ended to cure any perceived prejudice. For example, he did not seek leave to take additional depositions, extend the discovery period, or obtain other relief which might be available. Further, Farley did not suggest that he could not respond to CUNA's motion for summary judgment by seeking relief under Rule 56(d). In fact,

---

[2] Rule 7(a) states in its entirety that "[o]nly these pleadings are allowed:
    (1) a complaint;
    (2) an answer to a complaint;
    (3) an answer to a counterclaim designated as a counterclaim;
    (4) an answer to a crossclaim;
    (5) a third-party complaint;
    (6) an answer to a third-party complaint; and
    (7) if the court orders one, a reply to an answer. Fed. R. Civ. Proc. 7(a).

Farley submitted a full-throated opposition to CUNA's motion. Accordingly, Farley's motion to strike is **DENIED**.

    IV.    **Count I: Age Discrimination**

        **A. Legal Background**

The ADEA provides that an employer may not "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). "To prevail on an ADEA claim, a plaintiff must prove by a preponderance of the evidence that age constituted the but-for cause of the adverse employment action." Bandy, 59 F.4th at 710 (citing Gross v. FBL Fin. Servs., 557 U.S. 167, 176 (2009)). "Importantly, 'an employee cannot prevail on an age discrimination claim by showing that age was *one* of multiple motives for an employer's decision; the employee must prove that the employer *would not have* [taken the adverse employment action] in the absence of age discrimination." Id. (quoting Westmoreland v. TWC Admin. LLC, 924 F.3d 718, 725 (4th Cir. 2019)) (emphasis in original).

An employee may prove age discrimination either through direct evidence of discrimination or through the burden-shifting framework established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 807 (1973). See O'Connor v. Consolidated Coin Caterers Corp., 517 U.S. 308, 311 (1996) (assuming that the McDonnell Douglas framework applies in the ADEA context). The three-step framework first requires that the plaintiff establish a prima facie case of discrimination. Laber v. Harvey, 438 F.3d 404, 430 (4th Cir. 2006). In a force reduction case, where "unnecessary positions are eliminated" rather than where "a putatively poor-performing employee is terminated and replaced by someone outside the protected class," a plaintiff must prove that (1) he was 40 years of age or older at the time of the termination; (2) he was qualified for the job and performing in accordance with his employer's legitimate

9

expectations; (3) his employer nonetheless discharged him; and (4) his "job duties were absorbed by employees not in the protected class or . . . [the employer] did not treat [the plaintiff's] protected characteristics neutrally when deciding to terminate [him]." Guessous v. Fairview Prop. Invs., 828 F.3d 208, 219 (4th Cir. 2016); Westmoreland, 924 F.3d at 725.

Once a plaintiff establishes a prima facie case, the burden shifts to the employer to demonstrate a "legitimate, non-discriminatory reason for its adverse employment decision." Laber, 438 F.3d at 430. If the employer meets this burden, the plaintiff must show that the "articulated reason is a pretext for age discrimination." Id. The plaintiff cannot "simply show the articulated reason is false; he must also show that the employer discriminated against him on the basis of age." Id. However, in some instances, "proof that the employer's reason is false is sufficient to show age discrimination when combined with the plaintiff's prima facie case." Id. (citing Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147–48 (2000)). The plaintiff's "own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for a discharge." Dockins v. Benchmark Commc'ns., 176 F.3d 745, 749 (4th Cir. 1999) (quoting Williams v. Cerberonics, Inc., 871 F.2d 452, 456 (4th Cir. 1989)).

### B. Farley's Prima Facie Case of Discrimination

The first three elements of Farley's prima facie case are not in dispute. CUNA does not contest that Farley was over 40 years old, that he was performing their jobs satisfactorily, and that CUNA terminated Farley's employment.

The focus on Farley's age discrimination claim is on CUNA's contention that he cannot establish that CUNA divided his job duties among others not in the protected class or that CUNA did not treat age neutrally when it terminated his employment. CUNA acknowledges that many

of Farley's responsibilities were absorbed by O'Dell, Wichman, and Munley, who were all no more than seven years younger than Farley. Colin Hamilton, who was substantially younger than Farley, assumed some of Farley's administrative tasks which were not time consuming and which often are assigned to sales employees. Specifically, Hamilton became the primary contact for the West Virginia Credit Union League, an interest group that "advocate[s] for and promote[s] the benefits of credit unions to the public and lawmakers," a position that Farley had previously held.[3] Dkt. 39-3 ¶¶ 4–5. CUNA asserts that the fact that Hamilton took on this administrative task is not material to the issue of whether CUNA would not have selected Farley for elimination over O'Dell and Arvold but for his age.

Here, the fact that CUNA assigned certain administrative tasks to a substantially younger employee does not show that Farley's "job duties were absorbed by employees not in the protected class." Guessous, 828 F.3d at 219. In Guessous, an Arab-American Muslim woman from Morocco was terminated from her position as a bookkeeping assistant because the employer lacked enough work for a full-time bookkeeping position. Id. at 219. The plaintiff's duties were shifted to four non-Arab and non-Muslim employees. Id. at 215, 219. The court vacated summary judgment in favor of the employer and remanded the case because the plaintiff had sufficiently shown that her job duties were absorbed by employees not in the protected class. Id. at 219.

CUNA distributed Farley's job responsibilities among four employees, three of whom were close in age to Farley. Only Hamilton, who took on certain limited administrative tasks,[4]

---

[3] Munley became the primary contact for the Virginia Credit Union League, a position that Farley had also held. Second Hochsprung Decl. ¶ 5.

[4] Farley does not dispute that CUNA Mutual Group limited the scope of Hamilton's new responsibilities to serving as the point of contact for the West Virginia Credit Union League. Thus, for the purpose of CUNA Mutual Group's motion for summary judgment, I "consider the fact undisputed." Fed. R. Civ. Proc. 56(e)(2).

was "substantially younger." O'Connor, 517 U.S. at 313. Farley's job responsibilities extended far beyond the tasks Hamilton assumed to include overseeing sales executives, who met directly with the credit union customers, and drafting performance reviews for these sales executives, for which Farley evaluated the financial performance, credit union satisfaction, adherence to processes, and learning and growth of each sales executive. Other than discrete administrative tasks, CUNA allocated Farley's responsibilities to Arvold and O'Dell, who were not substantially younger than Farley.

Farley has not shown that CUNA disbursed his job duties to other employees not in the protected class, and must establish a material issue of fact exists of whether CUNA treated Farley's age neutrally in the decision to terminate him. Guessous, 828 F.3d at 219. Farley has provided no evidence to support his assertion that age constituted the but-for reason for his termination or that Munley relied on Farley's age when he and Hochsprung elected to eliminate Farley's position. Anderson, 477 U.S. at 252. The fact that Munley complained to HR, in part, about Farley's purported intent to sue for age discrimination does not indicate that age factored into the decision to eliminate his position. Farley agrees that Munley had an obligation to report Farley's intent to sue for age discrimination to HR. See Dkt. 35 at 15–16.

While Farley asserts that he has presented a prima facie case of age discrimination, he does not support this assertion with any reference to facts in the record. Farley, as the nonmoving party must "go beyond the pleadings and affidavits" to show there is a genuine issue for trial. Bandy, 59 F.4th at 709–10; Dockins, 176 F.3d at 749. Farley has not submitted even a "mere scintilla" of evidence to show that CUNA did not consider his age "neutrally when deciding to terminate him," much less to show that his age was the but-for cause of the termination of his

employment. Anderson, 477 U.S. at 252; Guessous 828 F.3d at 219. Farley has not established a prima facie case of discrimination under the ADEA.

### C. CUNA's Legitimate, Non-Discriminatory Reason

CUNA presents a legitimate, non-discriminatory reason for eliminating Farley's position and terminating his employment. CUNA made clear in 2019 to Farley and his fellow Select Sales managers that one of their positions would be eliminated because of the shrinking number of small credit unions. Farley does not dispute this fact—he acknowledges that the Select Sales segment "needed to go down one sales manager." Dkt. 30-9, Ex. A at 176:5–7. To decide which Select Sales manager to eliminate, Munley and Hochsprung created a decision matrix to evaluate the three managers based on seven categories that addressed, among other qualities, leadership, conflict management, and collaboration. Farley scored the lowest of the three sales managers. Based on this matrix, CUNA chose to eliminate Farley's position. So long as an employer puts forth a lawful reason for termination, "it is not the court's role to determine if that reason 'was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'" Brooks v. Potomac Family Dining Grp. Operating Co., LLC, No. 5:17-cv-00049, 2019 WL 1441628, at *7 (W.D. Va. Mar. 31, 2019) (quoting Dejarnette v. Corning Inc., 133 F.3d 293, 299 (4th Cir. 1998)).

### D. Plaintiff's Showing of Pretext

Once an employer has provided a non-discriminatory reason for the termination, "the burden then shifts back to the plaintiff to prove by a preponderance of the evidence that the stated reason for the adverse employment action is a pretext and that the true reason is discriminatory." Guesseous, 828 F.3d at 216. Farley must show that the basis for his termination is "unworthy of credence," Reeves, 530 U.S. at 143, "which requires more than a mere showing

that the 'proffered reason is unpersuasive, or even obviously contrived,'" Brooks, 2019 WL 1441628, at *8 (quoting Reeves, 530 U.S. at 146). "It is not enough . . . to disbelieve the employer; the factfinder must believe the plaintiff's explanation of intentional discrimination.'" St. Mary's Honor Ctr., 509 U.S. at 519.

Farley points to Munley's August 2020 complaint as evidence that CUNA's stated reason for termination was pretextual. Specifically, Farley states that "[t]he bizarre and disturbing timeline of this case clearly demonstrates that a reasonable juror would find CUNA's selection of Mr. Farley for elimination as a pretextual reason." Dkt. 35 at 22. Farley proposes several rhetorical questions in his brief in opposition to summary judgment and cites several cases for the proposition that contradictions or falsehoods "have traditionally been used to establish pretext." Id. at 23. However, Farley does not cite to any evidence in the record to challenge CUNA's stated reason for terminating his employment: that the Select segment needed to downsize and he scored the lowest of the three Select Sales managers on the decision matrix. The suggestion that Munley held personal animus against Farley is not sufficient to demonstrate that CUNA's real reason for termination was Farley's age even if Farley has shown that the Company's basis was "false." Laber, 438 F.3d at 430. Further, if Munley's personal animus led to the termination decision, then Farley's age was not the but-for cause of his termination.

## V.     Count II: Retaliatory Discharge

Farley asserts in Count II that CUNA unlawfully retaliated against him for engaging in activity protected by the ADEA. In September 2020, Farley sent an email to Julien stating that he believed that he was "being set up for failure here and [he] think[s] it has something to do with [his] age which is unfair." Dkt. 35-1. Williams investigated Farley's claim and concluded that it was unfounded. Farley sent another email to Williams in February 2021 to follow up on

Williams' investigation and provide further context on the success of the Select Sales group. Id. Farley claims that these emails collectively constitute protected activity and caused CUNA to terminate his employment. Id. at 16.

The ADEA prohibits employers from discriminating against an employee who "has opposed any practice made unlawful by this section, or because such individual . . . has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this chapter." 29 U.S.C. § 623(d). To establish a prima facie case of retaliation, Farley must demonstrate that (1) he engaged in protected activity; (2) his employer took adverse action against him; and (3) a causal connection existed between the protected activity and the adverse action. Causey v. Balog, 162 F.3d 795, 803 (4th Cir. 1998).

Protected activity includes conduct where an individual has "opposed any practice made unlawful by this section." 29 U.S.C. § 623(d). "Opposition" occurs when a plaintiff acts in a manner that opposes any practice made unlawful by the ADEA. Id. The Supreme Court has defined "oppose" by looking to its plain meaning: "to resist or antagonize . . . to contend against; to confront; resist; withstand, . . . to be hostile or adverse to, as in opinion." DeMasters v. Carilion Clinic, 796 F.3d 409, 416 (4th Cir. 2015) (citing Crawford v. Metro. Gov't of Nashville & Davidson Cnty., 555 U.S. 271, 276 (2009)). "The threshold for oppositional conduct is not onerous." Id. at 417. "[W]hen an employee communicates to her employer a belief that the employer has engaged in . . . a form of employment discrimination, that communication virtually always constitutes the employee's opposition to the activity."[5] Crawford, 555 U.S. at 276 (internal citations omitted).

---

[5] The February 2021 email to Williams does not assert a claim of age discrimination, however Farley referenced multiple times the prior investigation into his age discrimination complaint. For the purpose of summary judgment, I will assume that this email constitutes opposition under the statute. See 29 U.S.C. § 623(d).

15

Assuming Farley's two emails constituted protected activity under the ADEA, he has failed to produce sufficient evidence to establish a causal connection between his protected activity and his termination. Farley attempts to show a causal connection by "temporal proximity" and by "the existence of facts that suggest that the adverse action occurred because of the protected activity." Dkt. 35 at 16. As to temporal proximity, Farley cannot show that the February 2021 email to Williams, is sufficiently close in time to his June 2021 termination. "[T]he temporal proximity between an employer's knowledge of protected activity and an adverse employment action must be very close." Clark Cnty. Sch. Dist. V. Breeden, 532 U.S. 268, 273 (2001); United States ex rel. Cody v. ManTech Int'l, Corp., 746 F. App'x 166,180 (4th Cir. 2018). A three-month gap is too large for "mere temporal proximity" to show causation. Breeden, 532 U.S. at 268.

The evidence does not raise a genuine dispute over whether Farley's protected activities caused his termination. Farley states that the company acknowledged he was not terminated for performance reasons, but rather because it "determined it needed to reduce the number of Select Sales managers from three to two." Dkt. 35 at 16. Further, Farley states that Munley informed him and his fellow employees that Farley "was not terminated for employment reasons." Id. at 17.

Farley fails to show a causal connection between his protected activity and his termination. He acknowledges that the Company "handpicked" him because it needed to reduce the size of its Select Sales group. Id. It follows, then, that CUNA did not terminate him but for his complaints of age discrimination. Farley contends that if the Company did not terminate him because of his performance, it must have done so because of his protected activity. But Farley bases this conclusion on the flawed premise that the only two available reasons for his

16

termination were either his job performance or his protected activity. But this misses the point. CUNA downsized the Select Sales Segment for legitimate business reasons which Farley acknowledges contributed to the decision to terminate his employment. The Company elected to downsize the Select segment and Farley scored the lowest on the decision matrix. Farley has not established the existence of a causal connection between his protected acts and the termination of his employment. Thus, his retaliation claim fails.

VI.     **Count III: Failure to Hire**

Farley alleged in Count III of his Complaint that both during and after termination of his employment, CUNA failed to hire him for other positions because of his age. However, Farley does not address this claim in his brief in opposition to summary judgment.[6] Farley's abandonment of his failure to hire claim constitutes a concession that summary judgment is appropriate on the claim. See Lee v. Belvac. Prod. Mach., Inc., No. 6:18-cv-75, 2020 WL 3643133, at *9 (W.D. Va. July 6, 2020) ("[I]t appears [plaintiff] has abandoned these claims, as she presents no argument on them in opposition to [defendant's] summary judgment motion. This alone entitles [defendant] to summary judgment on these claims."); Uribe v. Aaron's, Inc., No. GJH-14-0022, 2015 WL 72292, at *2 (D. Md. Jan. 5, 2015) (finding that plaintiffs abandoned their claims when they did not respond to an order to show cause or the defendant's motion for summary judgment); Bronitsky v. Bladen Healthcare, LLC, No. 7:12-CV-147, 2013 WL 5327447, at *1 (E.D.N.C. Sept. 20, 2013) ("Plaintiff's failure to oppose defendants' arguments made in support of their motion for summary judgment is fatal to plaintiff's claim."); Crouch v. City of Hyattsville, No. DKC 09-2544, 2012 WL 6019296, at *8 (D. Md. Nov. 30,

---

[6] At argument, Farley only reiterated the bare assertions of his failure to hire claim and did not point to any supporting evidence in the record. "[T]he nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation." See Glover v. Oppleman, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) (citation omitted).

2012) (granting summary judgment where plaintiff abandoned his argument by failing to respond to defendant's motion); Jones v. Danek Med., Inc., No. Civ. A. 4:96-3323-12, 1999 WL 1133272, at *3 (D.S.C. Oct. 12, 1999) ("The failure of a party to address an issue raised in summary judgment may be considered a waiver or abandonment of the relevant cause of action.").[7]

### VII.     Conclusion

For the reasons stated above, I **DENY** Farley's motion to strike and **GRANT** CUNA Mutual Group's motion for summary judgment in its entirety and this case is **DISMISSED**. An appropriate order will follow.

It is **SO ORDERED**.

Entered:  May 24, 2023

*Robert S. Ballou*

Robert S. Ballou
United States District Judge

---

[7] On the penultimate page of his brief, Farley lists seven facts that he contends are "material and in genuine dispute." Pl. Br. Opp. Summ. J. at 24. Farley cites no evidence in the record to support either the materiality or the disputed nature of these facts. Without going "beyond the pleadings and affidavits [to show] that there are specific facts showing that there is a genuine issue for trial," Farley cannot convince me to draw any conclusions about these blanket assertions. See Bandy, 59 F.4th at 709–10.